[S. F. No. 9511. In Bank.—January 5, 1923.]

## PALMA BURNS, Appellant, v. WILLIAM M. ROSS et al., Respondents.

[1] TRUST—FORGERY OF ASSIGNMENT OF CONTRACT OF SALE—PLEADING —PARTIES.—Where the vendee under a contract for the sale of real property intrusted the contract to another, and the latter without the vendee's knowledge or authority forged an assignment of the contract to himself and made a purported assignment thereof to others, who paid the balance of the price and received the deed, the vendor and forger were not necessary parties defendant in an action against the grantees to establish a trust in the property.

[2] ID.—PLEADING — COMPLAINT — SINGLE CAUSE OF ACTION.—A complaint to establish a trust in real property alleging the execution by the plaintiff of a contract for the purchase of the property from a land company, the intrusting of the contract and other papers to a third person, who without plaintiff's knowledge or authority, forged her name to an assignment of the contract to himself, the making of a purported assignment by such third person to the defendants, who paid the balance of the price and received the deed, and the tender by the plaintiff to the defendants of the amount paid by them under the contract, does not state a cause of action to quiet title either under section 738 or section 749 of the Code of Civil Procedure, and there is no improper joinder of causes of action.

[3] ID.—PLEADING — COMPLAINT — NATURE OF CAUSE OF ACTION — CONSTRUCTIVE TRUST.—A complaint alleging the execution by the plaintiff of a contract for the purchase of property from a land company, the intrusting of the contract and other papers to a third person, who, without plaintiff's knowledge or authority,

forged her name to an assignment of the contract to himself, the making of a purported assignment by such third person to the defendants, who paid the balance of the price and received the deed, and the tender by the plaintiff to the defendants of the amount paid by them under the contract, does not state a cause of action to establish a resulting trust under section 853 of the Civil Code, but states a cause of action to establish a constructive trust under section 2224 of such code.

[4] APPEAL—POINTS NOT RAISED—CONSIDERATION BY COURT.—Although it is true an appellant should state in his opening brief the points upon which he relies and that matters first raised in a reply brief may be disregarded, the supreme court is undoubtedly at liberty to decide a case upon any points that its proper disposition may seem to require, whether taken by counsel or not.

[5] CONSTRUCTIVE TRUST—FORGED ASSIGNMENT OF CONTRACT OF SALE—ACTS OF VENDEE—EFFECT OF.—Where the vendee under a contract of sale intrusted the contract to another and the latter forged an assignment thereof to himself and made a purported assignment to others, who paid the balance of the price and received the deed, no title to the contract passed and the right of the vendee to have a constructive trust established in her favor is not defeated even though the grantees were *bona fide* purchasers, nor by reason of the fact that she did not pay the last installment or record her contract, or on the theory that she was negligent in intrusting the contract to the forger.

[6] ID.—STATUTE OF LIMITATIONS—PRESUMPTION.—In the absence of anything to the contrary, it must be assumed that an action to establish a trust in real property was commenced within the four years allowed by section 343 of the Code of Civil Procedure.

APPEAL from a judgment of the Superior Court of Contra Costa County. A. B. McKenzie, Judge. Affirmed.

The facts are stated in the opinion of the court.

Hoefler, Cook & Snyder for Appellant.

J. J. Dunne for Respondents.

LAWLOR, J.—Plaintiff brought this action to have declared a resulting trust in her favor in certain land to which defendants hold the legal title, and to compel a conveyance of the land to her by the defendants upon her payment to them of such a sum as the court should deem equitable. A demurrer, both general and special in form,

interposed to plaintiff's second amended complaint, was sustained without leave to amend, and from judgment entered pursuant thereto plaintiff appeals.

The complaint alleged that on June 28, 1911, the Richmond Center Land Company owned the land in question, and on that date entered into a written agreement with appellant for its sale to her for $2,000, payable in installments. A copy of the agreement was attached to and made a part of the complaint. It was further alleged that in January, 1913, appellant became ill and bedridden, and while in that condition delivered to one John A. Fitzgerald, at his request, the contract of sale and other papers, and that thereafter, until May, 1917, she regularly delivered to him sufficient money to pay the monthly installments provided for in the contract of sale; that on January 6, 1913, Fitzgerald, without her knowledge or authority, forged her name to an assignment of the contract of sale to himself; that on November 3, 1913, he executed, without appellant's knowledge or consent, a purported assignment of the contract from himself to respondents; that before the latter assignment appellant "had paid on account of the said purchase price of said lots of land, the sum of one thousand and forty dollars ($1,040), together with twenty-six and 40/100 dollars ($26.40) interest and twenty-eight dollars ($28.00) taxes"; that after November 26, 1913, respondents paid on account of the purchase price $960, together with $69.30 interest and $29.40 taxes; that thereafter by virtue of the contract and the assignments thereof and the payments made thereunder respondents demanded and the company executed to them a deed of the land in question, which deed was recorded; that appellant first learned in June, 1917, of the purported assignments of the agreement of sale and that respondents had secured a deed of the land; that she was informed of those facts after she wrote to the company on May 30, 1917, requesting a statement of the amount of taxes due on the land.

In the complaint appellant also tendered to respondents the sums of $960, $69.30 and $29.40, alleged to have been paid by them in connection with the land, or any other sums which the court should find they had so paid.

The agreement of June 28, 1911, provided that appellant should make an initial payment of $200, receipt of which

amount was thereby acknowledged; that she should make payments of not less than $30 per month, together with interest at the rate of six per centum per annum on deferred payments; that the whole of the principal and interest should be paid within sixty months of the date of the agreement; that title to the land should remain in the seller until all money due should have been paid; that the seller should pay all taxes for the first two years and the buyer should pay them thereafter; that if, after one-fifth of the price had been paid, the buyer should be unable to meet any payment, an extension of ninety days might be had and that time should be of the essence of the contract.

[1] Three objections to the sufficiency of the complaint are now advanced by respondents. The first is that John A. Fitzgerald and the land company should have been joined as parties defendant, under section 379 of the Code of Civil Procedure, it being insisted they have some interest in the property adverse to appellant. The complaint is not defective in this particular, for whatever interest Fitzgerald or the land company had in the property has been assigned to respondents, the land company admittedly having been fully paid for its interest. Nothing is asked from either of them and they are in no way necessary parties to a determination of the respective rights of appellant and respondents in the property which is sought in this action.

[2] The second objection to the complaint is that there is an improper joinder of causes of action, in that a cause of action to have a trust decreed in land is joined with one to quiet title. But there is no claim of any title in appellant other than the equitable right to have a trust in her favor declared, and the enforcement of that right is all she asks in this action. The complaint does not purport to be one to quiet title either under section 738 or section 749 of the Code of Civil Procedure, proceedings under which sections she could not, as the holder of a mere equity, institute against the holder of the legal title. (*Buchner* v. *Malloy,* 155 Cal. 253 [100 Pac. 687].)

[3] Respondents' third and principal contention is that the complaint fails to state facts sufficient to constitute a cause of action. It is claimed it does not state facts sufficient to constitute any trust in favor of appellant, whether *pro tanto* or otherwise; that where one of two innocent

persons must suffer by the act of a third, he who has enabled such third person to cause the loss, in this case appellant, must bear it, and that it affirmatively appears from the complaint that if appellant ever had any right it is barred by her laches.

Appellant insists the complaint shows the major portion of the consideration for the transfer of the land was paid by her and that therefore a trust results in her favor *pro tanto;* that even if this position is not maintainable, respondents have no right to retain the property as a result of Fitzgerald's act in forging the assignment, and that under one theory or the other a cause of action is stated.

The complaint is not specific in many respects and certain allegations which might well be set forth, such as those concerning the dates of the transfers of the property, are omitted. But in our opinion it does state facts sufficient to constitute a cause of action and to justify the declaration of a trust in appellant's favor. This conclusion is not reached upon the theory, chiefly relied on by appellant, that a resulting trust arose under section 853 of the Civil Code, which provides: "When a transfer of real property is made to one person, and the consideration therefor is paid by or for another, a trust is presumed to result in favor of the person by or for whom such payment is made." Respondents are to be regarded instead as constructive trustees under section 2224 of the Civil Code, which is as follows: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

That the facts presented here are not embraced within the theory of resulting trusts is obvious from a consideration of the following cases, wherein that principle was considered. In *Woodside* v. *Hewel,* 109 Cal. 481 [42 Pac. 152], it was said that "The equitable principle that when, upon the purchase of lands, the consideration therefor is furnished by one person, and the conveyance is taken in the name of another, a resulting trust in the lands is created in favor of the one from whom the consideration came, is well recognized, as is also the rule that a resulting trust is created *pro tanto* where only a specific part of the

consideration was so furnished." In *Lezinsky* v. *Mason
Malt Whiskey Distilling Co.,* 185 Cal. 240, 247 [196 Pac.
884, 888], the court declared: "The furnishing of the con-
sideration, by reason of which a resulting trust arises, is
a furnishing, not to the seller of the property bought, but
to the purchaser. The whole theory upon which a trust
is imposed upon the purchaser in such a case is that, as
between him and a third person, it was the latter who
furnished the consideration with which the property was
acquired, so that it will be presumed that as between them
it was intended that the purchase be for the benefit of him
who supplied the means with which to make it. . . . A
resulting trust is not founded on the simple fact that money
or property of one has been used by another to purchase
property. It is founded on a relationship between the two,
on the fact that as between them, consciously and in-
tentionally, one has advanced the consideration wherewith
to make a purchase in the name of the other. The trust
arises because it is the natural presumption in such a case
that it was their intention that the ostensible purchaser
should acquire and hold the property for the one with
whose means it was acquired."

In the case at bar there are no circumstances which raise
any presumption that the parties herein intended the land
for the benefit of appellant. No money was paid by appel-
lant to respondents or on their behalf; in fact, respondents
presumably considered they had acquired from Fitzgerald
any interest which appellant had in the land, and that they
themselves had purchased it with their own money. In
*Lezinsky* v. *Mason Malt Whiskey Distilling Co., supra,* it
is also said (p. 247): "Manifestly, this theory has no ap-
plication to a case where the purchaser uses what he be-
lieves to be his own property in making the purchase. So
far as he is concerned, the consideration for the sale is what
he himself furnishes."

But in our opinion the facts alleged bring the case within
the application of section 2224 of the Civil Code and entitle
appellant to have a constructive trust in her favor imposed
upon the property. The equitable principle contained in
that section is thus stated in *Mandeville* v. *Solomon,* 33 Cal.
38, 44: "Where the circumstances of a transaction are
such that the person who takes the title to property cannot

be permitted to hold and enjoy it, in whole or in part, without necessarily violating some principle of equity, a constructive trust will be raised for the benefit of the party entitled in equity to its beneficial enjoyment. It is because he holds the property, or some interest therein, which it is inequitable for him to enjoy, that the court declares the trust and fastens it upon his conscience, and wrests the property or interest from him and causes it to be transferred to the person equitably entitled to it.'' In Pomeroy's Equity Jurisprudence, fourth edition, volume 2, page 1919, it is said: ''Where an owner has been apparently deprived of his title by a fraudulent conveyance or assignment which is void, as where he was procured to execute it by the fraudulent representation and under the conviction that it was an entirely different instrument, or where it was fraudulently executed in his name without any authority express or implied, or where, after being executed by him for one purpose, it was fraudulently altered without his knowledge or authority, so as to include the property, *or where it was a forgery,* and he has done no collateral act with reference to it which might amount to an equitable estoppel by conduct, and the property, by means of such transfer, comes into the hands of a purchaser for value and without notice, the original defrauded owner is not barred of his remedy.'' (Italics ours.)

According to the complaint, appellant intrusted Fitzgerald with the contract of sale and he by a forged assignment of it to himself and another to respondents enabled them apparently to secure the right to purchase the land and later the land itself. It is true respondents are assignees of the wrongdoer and it is not alleged they themselves were guilty of any wrongful act or were not *bona fide* purchasers. But the original assignment having been forged, no title to the contract passed and the rights of appellant under it cannot be defeated, even, as respondents contend, by a *bona fide* purchaser.

[4] Respondents object to a consideration of this point that a cause of action was stated under section 2224 of the Civil Code on the ground that it was presented for the first time in appellant's reply brief. Although it is true an appellant should state in his opening brief the points upon which he relies and that matters first raised in a

reply brief may be disregarded, this court "is undoubtedly at liberty to decide a case upon any points that its proper disposition may seem to require, whether taken by counsel or not." (*Hibernia Sav. and Loan Soc.* v. *Farnham*, 153 Cal. 578, 584 [126 Am. St. Rep. 129, 96 Pac. 9].)

[5] It is argued by respondents that inasmuch as the contract provided the title should not pass until the purchase price was fully paid, and appellant never paid the last installment, she could claim no right to the property whatever. But appellant is not asking anything of the land company, which has fully performed its obligations under the agreement of sale and transferred title to respondents upon their performance of the purchaser's obligations. Nor is she seeking to assert a legal title paramount to that held by respondents. She is endeavoring to recover only her proportionate share of the property from respondents, who have paid the last installment and who hold the title.

In support of their second contention respondents insist that appellant, by giving Fitzgerald charge of her papers, made him her business representative; that she thereby invested him with the management of her affairs and put into his hands the means of wrongdoing. *Schultz* v. *McLean*, 93 Cal. 329, 357 [28 Pac. 1053, 1058], is cited to the point that "The vendee will not be compelled by a court of equity to lose the benefit of a bargain obtained in all fairness and honesty, because of a fraud practiced upon the vendors by their own agents." However, in *Walsh* v. *Hunt*, 120 Cal. 46, 52 [39 L. R. A. 697, 52 Pac. 115, 117], wherein the court considered the liability of a maker of a promissory note which had been altered through the forgery of the maker's agent, it was held: "But, if it were conceded that the finding established carelessness or negligence by defendant, which might in some degree have contributed to the successful execution of the fraud by which plaintiff was deceived into parting with her money, it would not then constitute an estoppel. This is upon the principle that a party is not bound in transactions of this character either to anticipate or take precaution against the commission of a crime by which another may be deceived; that where it is through the instrumentality of a criminal act that the wrong is accomplished, it is the crime and not the negligent act which is the proximate cause of

injury; and in such a case the maxim that where one of two innocent persons must suffer from the wrongful act of another, the loss must fall upon the one making the act possible, has no application."

In the case at bar appellant was not bound to anticipate that Fitzgerald would commit forgery and assign her contract, and, as already pointed out, her rights cannot be defeated by his act in that regard. As respondents' claim is based solely on the assignment from Fitzgerald, appellant's negligence in other particulars, such as her failure to record her contract, is immaterial.

[6] Respondents' argument with reference to their third point is that it must be presumed appellant has stated her cause as favorably as possible to herself and that the parties have followed the ordinary course of business; that from this presumption follows another that, inasmuch as appellant alleged respondents paid the balance of the purchase price and took the deed from the land company after November 26, 1913, they took the deed and had it recorded on November 27, 1913. From this it would follow that, as the second amended complaint was filed on August 22, 1918, nearly five years after appellant had the means of knowledge of respondents' claim, her cause of action is barred by laches and by the statute of limitations.

In the demurrer it was stated "that the cause of action attempted by said plaintiff to be set forth in said second amended complaint is barred by laches." There was no allegation that it was barred by the statute of limitations. It is said in *Hecht* v. *Slaney*, 72 Cal. 363, 366 [14 Pac. 88], cited with approval in *Lezinsky* v. *Mason Malt Whiskey Distilling Co., supra,* that "Whatever may once have been the rule, it is now well settled that the statute of limitations runs in favor of a defendant chargeable as a trustee of an implied trust, and it is not necessary, in order to set the statute in motion, that he should have denied or repudiated the trust. [Citing authorities.]

"In such a case, the statute begins to run when the wrong complained of is done, and under our code the limitation is four years. (Code Civ. Proc., sec. 343; *Piller* v. *Southern Pacific R. R. Co.,* 52 Cal. 42.)" It must be assumed, in the absence of anything to the contrary, that

the action was commenced within the four years allowed by the statute.

In *Meigs* v. *Pinkham*, 159 Cal. 104 [112 Pac. 883], the court declared that "Under our law, as the statute of limitations is applicable to both legal and equitable actions, there can be no laches in delaying the bringing of an action if it is brought within the period of limitation [citing authorities], unless there are some facts or circumstances attending the delay which have operated to the injury of the defendant." There are no facts alleged in the complaint from which it appears that any injury will result from appellant's delay in instituting the proceeding.

Inasmuch as appellant has offered to do equity, she is entitled to her own equitable relief.

The judgment is reversed.

Lennon, J., Shaw, C. J., Waste, J., Wilbur, J., and Ward, J., concurred.