[Civ. No. 11339. First Appellate District, Division Two.—April 4, 1940.]

A. R. BAUER, Respondent, v. O. W. BAUER, Appellant.

William J. O'Brien, John F. Poole and Pacht, Pelton, Warne & Black for Appellant.

William C. Jensen for Respondent.

SPENCE, J.—Plaintiff sought to quiet title to twenty-three bonds issued by the Southern California Telephone Company. Defendant O. W. Bauer, who is the brother of plaintiff and will be hereinafter referred to as the defendant, filed his answer and cross-complaint denying the material allegations of the complaint and alleging that in 1919, the father of plaintiff and defendant created a trust with respect to said bonds and transferred them to said defendant as trustee. He alleged that said bonds were in the possession of William C. Jensen, who was made a cross-defendant. He therefore

prayed that plaintiff take nothing by her action and that it be ordered that said bonds be delivered to him as trustee for the purposes of the trust. Defendant S. A. Best filed his answer and cross-complaint, claiming an interest in said bonds by reason of certain dealings with plaintiff. The trial resulted in judgment in favor of plaintiff and against defendant and from said judgment, defendant appeals.

It appears that the transaction giving rise to this litigation occurred in 1919. Some years prior thereto, plaintiff had married one Kitts, but, prior to 1919, these parties had been divorced. The father found that plaintiff was in financial difficulties and he testified that he decided to help her "by giving her bonds enough to keep her in good circumstances and I also bought a house for her for a home". There is some conflict in the evidence regarding the exact nature of the bond transaction in 1919. It is admitted by all that the bonds were delivered to plaintiff by her father at that time and that they remained in her possession, or the possession of those claiming under her, ever since that time. It is further admitted by all that while said parties caused said bonds to be registered in the name of "O. W. Bauer, trustee for Alice R. Kitts", said defendant never had possession of said bonds or collected the maturing interest coupons during the seventeen years intervening between 1919 and the time of the trial. Plaintiff, defendant and the father testified regarding the conversations had by the parties in 1919. It was plaintiff's theory and her testimony tended to show that it was the father's intention to make an unconditional gift of said bonds to plaintiff and that he delivered them to plaintiff for that purpose; that the parties discussed the desirability of protecting said bonds from any possible claims made by creditors. of her divorced husband and decided to register the bonds as above indicated but without any intention of creating a trust. There was ample testimony given by plaintiff to sustain this theory and there was further support for this theory in the testimony relating to the acts and declarations of the parties during the seventeen years which followed. It was defendant's theory, on the other hand, that a trust had been created. Defendant and the father gave testimony concerning the terms of this alleged trust, but it is significant to note that their testimony is not entirely in accord concerning these terms.

■ The trial court's findings sustained plaintiff's theory. It found that plaintiff was the owner of the bonds; that the father "made a gift" of said bonds to plaintiff in 1919 at which time said bonds "were delivered unconditionally to plaintiff"; that about said time, plaintiff caused said bonds to be registered as above set forth but that no trust was created or intended by the parties or any of them; that it was not intended by said parties that such registration should have any legal effect or that said defendant should act "in any capacity other than as mere agent and dummy for plaintiff"; that there were creditors of plaintiff's former husband, none of whom were creditors of plaintiff, and said bonds were caused to be registered in defendant's name "for the purpose only of protecting plaintiff and her property from harassment by the creditors of her said former husband"; that the acts performed in registering said bonds as above set forth "were a fiction and a sham" done only for the purpose above stated which was at all times known to all of said parties.

The trial court's conclusions and judgment were in accord with the findings. It was ordered, adjudged and decreed that defendant O. W. Bauer had not "either in his individual or in his claimed representative capacity as trustee" any right, title or interest in said bonds; that plaintiff's title be quieted against said defendant "both individually and as such claimed trustee"; that said defendant had never been trustee and that no trust had ever been created with respect to said bonds; and that said defendant be directed and ordered to execute and deliver to plaintiff proper endorsements and transfers of said bonds within ten days after the signing of the judgment.

Practically all of defendant's contentions on this appeal are based upon the assumption that a trust had been created and upon the claim that the evidence was insufficient to support the trial court's findings to the effect that there had been an unconditional gift of the bonds to plaintiff free of any trust. We find no merit in these contentions. It was plaintiff's claim that no trust had been created and she therefore brought this action against defendant individually. The claim that a trust had been created was raised by the allegations of said defendant's answer and cross-complaint. Plaintiff never claimed or admitted that a trust had been created. On the contrary, plaintiff claimed that she was the owner of the legal and equitable title to the bonds by virtue of said

unconditional gift and she sought to quiet her title against the adverse claim of said defendant. This was entirely proper and the trial court found in accordance with plaintiff's claims upon evidence which in our opinion was sufficient to support the findings. Defendant cites and relies upon *Buchner* v. *Malloy,* 155 Cal. 253, where the court said at page 255 [100 Pac. 687], ''That an action to quiet title will not lie in favor of the holder of an equitable title as against the owner of the legal title is a proposition settled by repeated decisions of this court.'' But this rule can have no application where the plaintiff in such quiet title action claims and the trial court finds that no trust was created and that the plaintiff was the owner of both the legal and equitable title. ██ The mere fact that the bonds were registered by the parties in the name of defendant under the designation of ''trustee'' did not conclusively show that a trust had been created or that the legal title had passed to defendant. Other evidence was introduced to show that such registration was not intended to have any such effect and such evidence was properly admitted for that purpose. (*P. A. Smith Co.* v. *Muller,* 201 Cal. 219 [256 Pac. 411]; *Cooper* v. *Cooper,* 3 Cal. App. (2d) 154 [39 Pac. (2d) 820]; *Texas Co.* v. *Berry Garage,* 121 Cal. App. 455 [9 Pac. (2d) 241].) Defendant points to certain testimony of plaintiff in which she used the word ''trustee'' but we believe that a reading of the entire testimony shows that she used said word merely with reference to the admitted designation of defendant as trustee in the registration and not in its technical, legal sense.

██ One further contention raised by defendant requires consideration. The trial was had and the judgment was entered in 1936. The bonds in question were called as of May 1, 1936. The trial court, after ordering the endorsement and transfer of the bonds by defendant, adjudged that ''from and after May 1, 1936, and until such time as defendant and cross-complainant fully and completely complies with said provisions of this decree, plaintiff shall have and recover from said defendant and cross-complainant interest at the rate of seven per cent per annum upon the sum of twenty-three thousand ($23,000.00) dollars''. Defendant contends that the trial court erred in entering judgment requiring the payment of interest as indicated but we find no merit in this contention. It is true, as pointed out by defendant, that no

claim for interest or for a money judgment was made in the complaint. Said complaint was filed prior to May 1, 1936, and the bonds had not then been called. The judgment was entered after May 1, 1936, and after the bonds had been called. Defendant admittedly refused to release his alleged claim upon said bonds and he thereby prevented plaintiff from obtaining the proceeds of said bonds following the calling thereof. We believe it was entirely proper for the trial court to include in the judgment the above-mentioned provision for the recovery of interest from the time of the calling of said bonds. Such provision was necessary in order to afford complete relief to plaintiff and it is a well-settled rule that once a court of equity has obtained jurisdiction of a cause, it will dispose of the entire controversy and grant complete relief in order to avoid a multiplicity of actions. (10 Cal. Jur. 496, sec. 41).

The judgment is affirmed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on May 4, 1940, and the following opinion then rendered thereon:

THE COURT.—Since the opinion was filed in this cause, appellant has substituted new counsel and has filed a petition for rehearing and an application for an order to take additional evidence.

■  We shall first consider the petition for rehearing. There is but one new point raised therein. Appellant now contends that ''This court is without jurisdiction to hear or determine the instant appeal because the judgment from which the appeal was taken is an interlocutory and not a final judgment.'' It is of interest to note that this contention is now made by the party who prosecuted the appeal and that the point was not previously suggested by any of the parties. A consideration of this contention requires the statement of further facts.

In the opinion heretofore filed we made but passing reference to the answer and cross-complaint of defendant S. A. Best or the portions of the findings or judgment relating to his claimed interest in the bonds. The trial court found that

he had entered into a certain written agreement with plaintiff with respect to said bonds and by virtue of that agreement, the trial court decreed that he recover from plaintiff the sum of $2,775; that he had a lien upon three of the bonds to secure the payment of said sum plus costs of sale; and that said three bonds be sold in the manner provided for the sale of pledged property and the proceeds be distributed as directed by said judgment. It was provided, however, that no proceedings to sell the bonds should be commenced until the expiration of ten days after the rendition of the judgment in order that defendant Bauer might within that time comply with the provisions of the decree and thereby enable plaintiff to pay said indebtedness from the proceeds of the redemption of the bonds. It was further decreed in the event defendant Bauer failed to comply and the sale of the three bonds thereby became necessary, that plaintiff should recover from defendant Bauer an additional amount equal to the costs incurred in such sale.

Then followed the final paragraph of the judgment, upon which paragraph appellant relies in making the above-mentioned contention. It read as follows: "This court shall retain jurisdiction of this cause and all of the parties who have appeared herein for the purpose of making such further orders as may be necessary to enforce the provisions of this decree and finally settling and determining the rights and obligations of each and all of said parties with respect each to the other and pertaining to those matters and things as to which this court has made its Findings of Fact and Conclusions of Law. After such settlement and determination, the court will render its final judgment herein and in said final judgment the amount of and division of costs will be fixed and adjudged as between each and all of the parties to this action."

Said portions of the judgment were not mentioned in the opinion heretofore filed herein as there appeared to be no controversy concerning them. Appellant presented in his briefs only the points discussed in said opinion and no claim was then made that said portions of the judgment made the judgment interlocutory and nonappealable.

Our reading of the entire judgment, including said last paragraph, leads us to the conclusion that said judgment was a final judgment within the meaning of section 963 of the Code of Civil Procedure and that it was therefore appealable.

It may be conceded that the last paragraph of the judgment indicated that another and "final judgment" was contemplated but we believe that this paragraph was inserted only out of an abundance of caution as the trial court expressly retained jurisdiction to "enforce the provisions of this decree". The wording found therein to the effect that it retained jurisdiction for the purpose of "finally settling and determining the rights and obligations of each and all of said parties with respect each to the other and pertaining to those matters and things as to which this court has made its findings of fact and conclusions of law" did not render said judgment interlocutory under the circumstances. The judgment entered, based upon said findings of fact and conclusions of law, disposed of every matter in controversy between the parties. It is entirely apparent that it was intended to settle and did settle all of the issues that had arisen or might arise except perhaps such questions as might arise and require determination solely for the purpose of carrying an otherwise final judgment into effect. The nature of the judgment before us shows that no other questions could arise after the judgment was entered.

Such being the case, we believe that the view that said judgment was a final judgment is supported by the text, quoted with approval by appellant and found in 2 California Jurisprudence at page 139, which reads as follows: "The general test applicable in determining whether a judgment is final or merely interlocutory therefore, is that if anything further in the nature of judicial action on the part of the court is essential to a final determination of the rights of the parties, the judgment is interlocutory only. But if no further questions can come before the court after a judgment has been entered, except such as are necessary to be determined in carrying the judgment into effect, the judgment is final." (See *Zappettini* v. *Buckles*, 167 Cal. 27 [138 Pac. 696]; *Security-First Nat. Bank* v. *Superior Court*, 132 Cal. App. 683 [23 Pac. (2d) 1055].)

We have examined the judgments under consideration in the authorities cited by appellant and find none of them similar to the one before us. It appears to us that the court would have had the jurisdiction which it intended to reserve without including any express reservation to that effect in the judgment. If such express reservation had been omitted there

would have been nothing to give said judgment the semblance of an interlocutory judgment and we find nothing in the express reservation here which had the effect of converting it from a final judgment into an interlocutory judgment.

We now turn to appellant's application for an order to take additional evidence. This application presents an unusual situation.

The evidence which appellant seeks to introduce in this court is a letter which appellant claims was written to him by his father under date of May 29, 1918, and was delivered to him in January, 1919. He states that said letter has been in his possession, being kept in his safe deposit box, at all times since January, 1919. On the trial in 1936, appellant and his father denied the existence of any written memorandum relating to the bond transaction or the alleged trust. Appellant now states that he discovered said letter in his safe deposit box on September 20, 1937. He further states that his former counsel then told him that it was too late to use it and that it would be important only in the event of a new trial. No application with respect to said letter was made in this cause until April 15, 1940, being at a time following the filing of the decision of this court and following appellant's substitution of new counsel.

We are of the opinion that said application should be denied. It may first be pointed out that said application was not promptly made after the alleged discovery of the additional evidence. The letter was admittedly discovered by appellant in his own possession over two and one-half years prior to the time that said application was made. It is only in exceptional cases that appellate courts should grant an application to take additional evidence and we believe that a delay in filing an application until two and one-half years after the discovery of such evidence and until after the filing of an adverse decision should ordinarily be a sufficient reason for the denial thereof. A further reason exists, however, for the denial of the application before us. It does not appear that the production of said letter on the trial or during the consideration of the appeal would have changed the result either in the trial court or in the appellate court. At most, said letter merely tends to corroborate some of the testimony given on the trial and it appears to be in accord with plaintiff's theory which was sustained by the trial court. All parties agreed that the

parties discussed the means of protecting plaintiff from harassment by the creditors of her former husband and that they all agreed to give the transaction at least the appearance of a trust with appellant as the named trustee. The registration of the bonds in the name of "O. W. Bauer, trustee for Alice R. Kitts" and the execution of any memorandum purportedly creating a trust was entirely consistent with this understanding. The real issue was whether the parties had actually intended to create a trust or had merely adopted the form of a trust as a "fiction and a sham" as claimed by plaintiff and as found by the trial court. Plaintiff claimed and the trial court found that her father had intended to make an unconditional gift of the bonds to plaintiff and that he delivered them to plaintiff for that purpose. The first paragraph of the letter now sought to be placed in evidence before this court reads as follows: "I have made a gift to your sister Alice R. Kitts of . . . (the bonds in question, describing them in detail)." In other paragraphs of the letter are found references to the purported trust which references were somewhat in line with certain oral evidence offered by appellant on the trial. The first paragraph, however, was entirely in line with plaintiff's theory and with the testimony of her father on the trial to the effect that he decided to help plaintiff "by giving her bonds enough to keep her in good circumstances and I also bought a house for her for a home". Even if appellant should be permitted to introduce said letter in this court, we find nothing therein to justify the making of other and different findings from those made by the trial court or to justify a reversal of the judgment by this court.

In view of the conclusions which we have reached, it appears unnecessary to consider whether this is a proper case, in any event, for the taking of such additional evidence on application of the appellant under the rules laid down in *Tupman* v. *Haberkern,* 208 Cal. 256 [280 Pac. 970].

Appellant's application for an order to take additional evidence is denied and the petition for a rehearing is also denied.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 29, 1940.